IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEX RUDAJ, | : | |
| Petitioner | : | No. 1:25-cv-02248 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| WARDEN LSCI ALLENWOOD, | : | |
| Respondent | : | |

## MEMORANDUM

Currently before the Court is pro se Petitioner Alex Rudaj ("Rudaj")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he challenges disciplinary sanctions imposed for destroying property valued at more than $100 while he was incarcerated in a Federal Bureau of Prisons ("BOP") correctional facility. For the reasons stated below, the Court will deny the petition.

I.     BACKGROUND

   A.     Rudaj's Convictions, Sentence, Place of Confinement, and Projected Release Date

Rudaj is currently serving an aggregate sentence of three hundred and twenty-four months' incarceration to be followed by five years of supervised release after a jury sitting in the United States District Court for the Southern District of New York found him guilty of racketeering (18 U.S.C. § 1962(c)), conspiracy to commit racketeering (18 U.S.C. § 1962(d)), assault in aid of racketeering (18 U.S.C. §§ 2, 1959(a)(2)), illegal gambling conspiracy (18 U.S.C. § 371), operation of an illegal gambling business (18 U.S.C. §§ 2, 1955), extortion conspiracy (18 U.S.C. § 1951), and attempted extortion (18 U.S.C. §§ 2, 1951).  See United

States v. Rudaj, No. 04-cr-01110-01 (S.D.N.Y. filed Oct. 6, 2004), ECF No. 431.[1] He is currently incarcerated at Federal Correctional Institution Allenwood Low ("FCI Allenwood Low") and has, according to the Federal Bureau of Prisons ("BOP") inmate locator (https://www.bop.gov/inmateloc/), an anticipated release date of December 20, 2027.

### B. Procedural History

Rudaj commenced the instant action by filing his Section 2241 habeas petition, which the Clerk of Court docketed on November 25, 2025.[2] (Doc. No. 1.) In his petition, Rudaj challenges disciplinary sanctions imposed on him, which included, inter alia, the loss of good conduct time ("GCT"), following a finding by a disciplinary hearing officer ("DHO") that he destroyed property valued at more than $100. (Id. at 2.) He appears to assert that the imposition of sanctions violated his due process rights under the Fifth Amendment to the United States Constitution. (Id. at 3.) For relief, Rudaj seeks an order directing the BOP to dismiss and remove the infraction from his prison record, restore his lost GCT, and restore other privileges taken from him. (Id. at 7.)

On December 12, 2025, the Court issued an order which, inter alia, directed Respondent to file a response to Rudaj's Section 2241 petition. (Doc. No. 4.) Respondent timely filed a response in opposition to the petition on December 31, 2025. (Doc. No. 6.) Rudaj then timely

---

[1] The Court takes judicial notice of the docket in Rudaj's underlying criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

[2] Rudaj neither remitted the filing fee nor sought leave to proceed in forma pauperis when he filed his petition; as such, an Administrative Order issued providing him with a period of thirty days to pay the filing fee or apply for leave to proceed in forma pauperis. (Doc. No. 3.) In response, Rudaj timely paid the fee. See (Unnumbered Docket Entry Between Doc. Nos. 3 and 4).

2

filed a reply brief in further support of his petition on January 14, 2026. (Doc. No. 7.) Rudaj's petition is now ripe for disposition.

### C. The BOP's Administrative Process in Inmate Disciplinary Cases[3]

The BOP has enacted specific procedures for disciplinary proceedings. See 28 C.F.R. §§ 541.1–.8. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. See id. § 541.5(a) ("The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing."). The incident report ordinarily must be issued within twenty-four hours of the time the staff member became aware of the prisoner's involvement in the incident. See id. (stating that inmates "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident"). The incident is then investigated by a staff member. See id. § 541.5(b) (indicating that "[a]fter [the inmate] receives an incident report, a [BOP] staff member will investigate it").

After the BOP staff member investigates the incident, the correctional facility's Unit Discipline Committee ("UDC") reviews the incident report and takes one of the following actions: (1) finds that the prisoner "committed the prohibited act(s) charged[] and/or a similar prohibited act[] as described in the incident report"; (2) finds that the prisoner "did not commit the prohibited act(s) charged"; or (3) refers the incident report to a DHO for further review. See id. § 541.7(a)(1)–(3). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. See id. § 541.3(a). If a prisoner is charged with a prohibited

---

[3] To provide context to the Court's recitation of Rudaj's relevant disciplinary proceedings at FCI Allenwood Low, the Court will first set forth the BOP's procedures for such proceedings.

act in the Greatest or High severity category, the UDC automatically refers the incident report to the DHO for further review. See id. § 541.7(a)(4).

When an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. § 541.8. Pursuant to these procedures, the prisoner is entitled to notice of the charges at least twenty-four hours before the hearing. See id. at § 541.8(c) (stating that the prisoner "will receive written notice of the charge(s) against [them] at least 24 hours before the DHO's hearing" and explaining that they "may waive this requirement, in which case the DHO's hearing can be conducted sooner"). The prisoner is entitled to appear at the hearing and have staff representation at the hearing. See id. at § 541.8(d), (e). The prisoner is also "entitled to make a statement and to present documentary evidence to the DHO on [their] own behalf." See id. § 541.8(f). A prisoner may request to have witnesses appear "before the DHO either in person or electronically" at the hearing on their behalf. See id. § 541.8(f)(1). However, the DHO may refuse to call requested witnesses if "they are not reasonably available, their presence at the hearing would jeopardize institutional security, or they would present repetitive evidence." See id. § 541.8(f)(3).

When rendering a decision on an incident report, the DHO considers "all evidence presented during the hearing." See id. § 541.8(f). The decision of the DHO must be "based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." See id. (emphasis added). Following the hearing, the DHO must provide a written report documenting (1) whether the prisoner was advised of their rights, (2) the evidence relied upon by the DHO, (3) the DHO's decision, (4) the sanctions imposed by the DHO, and (5) the reasons of the DHO for imposing those sanctions. See id. § 541.8(h)(1)–(5).

A prisoner dissatisfied with the DHO's decision "may appeal the [decision] through the Administrative Remedy Program, 28 CFR part 542, subpart B." See id. § 541.8(i). Pursuant to the Administrative Remedy Program, a prisoner may file an appeal from the DHO's decision to the Regional Director for the region where the prisoner is currently confined within twenty calendar days of the DHO's decision. See id. § 542.15(a). The Regional Director then has thirty calendar days to respond to the appeal. See id. § 542.18. If the prisoner is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at the BOP's Central Office within thirty calendar days from the date of the Regional Director's response. See id. § 542.15(a). General Counsel then has forty calendar days to respond to the appeal. See id. § 542.18.[4]

### D.    Rudaj's Disciplinary Proceedings

While he was incarcerated at FCI Allenwood Low, Rudaj was the subject of an incident report (No. 4123200) relating to an incident on May 25, 2025, in which he was charged with Code 218 – Destroying Property with a Value over $100. See (Doc. Nos. 1-1 at 1; 6-5 at 2). The incident report describes the events at issue as follows:

> On May 25, 2025, at approximately [7:25 p.m.,] while conducting a search of Lycoming A Cube 43, I noticed a section of fresh white paint on the cement blocking underneath the Lycoming A Cube 432L bunk which seemed inconsistent with the rest of the wall. I inspected the area and found a false cover concealing a hole in the wall for an inmate made wall safe. The hole was covered with a plaster-like material and painted over to conceal the hole. The inmates assigned to cell Lycoming A Cube 43 are Tavarez, Eulises Reg. No. 61498-509, and Rudaj, Alex

---

[4] "No administrative grievance is considered to have been fully and finally exhausted until denied by the [BOP's] Central Office." Sharpe v. Costello, 289 F. App'x 475, 478 (3d Cir. 2008) (unpublished) (citing 28 C.F.R. §542.15(a)). However, a prisoner may consider the lack of a timely response to their administrative remedy or appeal as a denial. See 28 C.F.R. § 542.18 (providing that if "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level").

>Reg No. 02381-748. The facilities department stated the wall repair would require, Speed Plug: $55.30, Concrete Block: $26.25, Fast Set Mortar: $19.99, Paint for Block: $59.98, Roller and Brush Kit: $29.98, for an approximate repair total of $191.80. The destroyed government property [is] valued in excess of $100.00.

See (Doc. Nos. 1-1 at 1; 6-5 at 2).

The incident report also indicates that on May 26, 2025, Rudaj was advised of his rights, received a copy of the incident report, and stated, "I've been in the cell for a few months, I had no idea it was there its [sic] not on my side, I keep to myself, I do not get in trouble, I've been down 21 years, I don't play inmate games, I'm just doing my time to get out." See (Doc. No. 6-5 at 4). Rudaj was noted as "display[ing] a cooperative attitude during [his] interview." See (id.).

On May 27, 2025, Rudaj told the UDC that he had "been down 21 years and [he had] never seen anything like that. [He] didn't know anything about it." See (id. at 3). On the same date, the UDC referred Rudaj's incident report to a DHO for a hearing. See (id.).

On June 12, 2025, a DHO held a hearing, after which they issued a report finding Rudaj guilty of the charge. See (Doc. Nos. 1-2 at 1–2; 6-7 at 2). The DHO noted that Rudaj declined assistance by a staff representative and did not call any witnesses on his behalf. See (Doc. Nos. 1-2 at 1–2; 6-7 at 2). The DHO also indicated that Rudaj stated during the hearing that "I just got put in there. I didn't put that hole in there. I didn't even know it was there." See (Doc. Nos. 1-2 at 1–2; 6-7 at 2).

Despite Rudaj's statement, the DHO concluded that he had destroyed government property valued at over $100. See (Doc. Nos. 1-2 at 1–2; 6-7 at 2). The "specific evidence relied on to support [the DHO's] findings" is noted in the DHO's written report as follows:

>Your due process rights were read and reviewed by you by the DHO at the time of this hearing. You stated that you understood your rights. You stated that you had no documentary evidence to present to the DHO. You did not request to have a staff representative. You did not request any witnesses.

>The DHO finds that you committed the prohibited act of destroying Government Property valued at $100.00 or more. The specific evidence relied upon in this case were photographs of the hole in the wall and a memorandum provided by facilities documenting the cost to repair the said damages. The written account of the reporting staff which states: "On May 25, 2025, at approximately [7:25 p.m.,] while conducting a search of Lycoming A Cube 43, I noticed a section of fresh white paint on the cement blocking underneath the Lycoming A Cube 432L bunk which seemed inconsistent with the rest of the wall. I inspected the area and found a false cover concealing a hole in the wall for an inmate made wall safe. The hole was covered with a plaster-like material and painted over to conceal the hole. The inmates assigned to cell Lycoming A Cube 43 are Tavarez, Eulises Reg No. 61498-509, and Rudaj, Alex Reg No 02381-748[.] The facilities department stated the wall repair would require, Speed Plug: $55.30, Concrete Block: $26.25, Fast Set Mortar: $19.99, Paint for Block: $59.98, Roller and Brush Kit: $29.98, for an approximate repair total of $191.80. The destroyed government property [is] valued in excess of $100.00."
>
>The DHO read the incident report aloud to you. You stated: "I just got put in there. I didn't put that hole in there. I didn't even know it was there."
>
>The DHO considered your statements and defense, some facts and the evidence presented. The DHO concludes: There was a hole bored into the wall structure of your assigned living area which caused damage to the structure. The hole was concealed with a false cover and fresh paint. Hollowed spaces in walls such as this are commonly used to conceal contraband from staff. There are photographs of the hole in the wall. You stated that you did not damage the wall and your cubicle had been in that condition since you moved into that area. There is a memorandum provided by facilities documenting the cost to repair the said damages. Other than denying the charges, you provided the DHO with no substantive evidence to support that you did not damage Government property valued [more] than $100.00. Being that neither you or your cell mate [sic] accepted responsibility for committing this act, and you both had reasonable access to this area, the DHO finds you both culpable for committing this act and you will split the cost to repair the damages with your bunk mate.
>
>Based on the above, the DHO finds that the greater weight of evidence presented shows that you have committed the prohibited act of destruction of Govt. [sic] property valued [at] over $100.00, Code 218.

See (Doc. Nos. 1-2 at 3–4; 6-7 at 3–4).

Following these findings, the DHO imposed five sanctions: (1) loss of twenty-seven days of GCT; (2) fifteen days of disciplinary segregation; (3) loss of commissary privileges for six months; (4) loss of the use of a tablet for six months; and (5) $95.90 in restitution. See (Doc.

7

Nos. 1-2 at 4; 6-7 at 4). The reasons for these sanctions are explained in the DHO's written report as follows:

> The action/behavior on the part of any inmate to destroy, alter, or damage government property, regardless of financial value, detracts staff from other responsibilities and lead to possible endangerment of staff or other inmates. The items/equipment that are damaged must be replaced and cannot be used for their intended purpose by others until the items are repaired/replaced. This puts unnecessary burdens on staff and resources.
>
> Placing you in Disciplinary Segregation was imposed as a penalty for wrongdoing. The disallowance of [GCT] was imposed because you were sentenced under the Prison Litigation Reform Act (PLRA) which mandates the disallowance of [GCT] per policy. The loss of commissary, tablet and monetary restitution sanctions were imposed to deter misconduct.

See (Doc. Nos. 1-2 at 4; 6-7 at 4).

Rudaj timely appealed from the DHO's decision to the Regional Director. See (Doc. No. 1-4 at 1–5). In his appeal, Rudaj complained that:

> On June 12, 2025 I was found guilty during a DHO hearing of destroying property arising from a 218 shot issued on May 25, 2025 for damage exceeding $100 related to a hole in a block under my cellmates [sic] bed. I had no knowledge of the hole. The hole in the wall block in cell # 43 could not be construed as being in a common area of our cell by any reasonable measure. . . . The hole identified by the Unit CO on duty was camouflaged by a plug covered in white paint under the head in the corner of my cell mates [sic] bunk. Only 3 or 4 days earlier than this discovery a previous cell mate [sic] went to the SHU for a disciplinary infraction. At that time cell # 43 was searched on two separate occasions by Unit CO's during pack out of my previous cell mate [sic]. At no time was contraband or a "hide" hole found on either occasion. Only on the 3rd search was it located by an officer lying flat under my cellmates [sic] bed and hitting the wall with a small hammer. Something under no circumstances would I have done in deference to my cell mates [sic] privacy. This location is clearly not [a] "common area". The BOP's repair cost estimate is also seriously flawed. The repair procedure is to simply fill the block with newspaper, cardboard or rags, then apply a mortar[-]based patch. The patch is then spot painted with a brush in matching paint. No concrete block is repaired and no speed plug is used. The actual repair, based upon information from a lead Orderly at BOP Allenwood Facilities, who is prepared to swear in evidence, requires 1/8 of a bag of mortar, ¼ pint of paint and perhaps a new paint brush. Inmate labor is used, the cost of which is nominal, brining the total estimated cost of repair to approximately $23.95 . . . .

> I respectfully request that the shot be cancelled as I clearly had no knowledge, nor any responsibility or could have taken any action in [sic] respect to this damage. I have been incarcerated for 21 years and during this time have an exemplary disciplinary record.

See (id. at 2).[5]

On August 12, 2025, the Regional Director issued a decision affirming the DHO's findings and sanctions. See (id.). The Regional Director's Response stated:

> You appeal the June 12, 2025[] decision of the [DHO at FCI Allenwood Low] finding you committed the prohibited act of Destroying/Damaging/Altering Government Property having Value in Excess of $100.00, Code 218, Incident Report No. 4123200. You deny committing the prohibited act, and list multiple issues which you contend support your request for the Incident Report to be expunged.
>
> The DHO reasonably determined you committed the prohibited act based on section 11 of the Incident Report and supporting evidence. A review of the disciplinary proceedings revealed no due process concerns or deviations from policy. Section 11 of the Incident Report contains sufficient notice of the charge and allowed you to prepare a defense. The record reflects the DHO afforded you the opportunity to present evidence and provide a statement in your defense. The DHO considered your statement prior to rendering a decision.
>
> The record in this case reflects substantial compliance with Program Statement 5270.09, Inmate Discipline Program. The decision of the DHO was based upon the greater weight of the evidence, and the sanctions imposed were consistent with the severity level of the prohibited act. The sanctions imposed were not disproportionate to your misconduct. Accordingly, your appeal is denied.

See (id.).

---

[5] Rudaj also attached to his appeal a drawing of his cell that included the location of the hole and a typewritten estimate in support of his valuation of the repair costs. See (id. at 3, 5).

Rudaj filed an appeal from the Regional Director's decision to the BOP General Counsel. (Doc. No. 1-5).[6] Rudaj asserts that he never received a response from the General Counsel. See (Doc. No. 1 at 3).[7]

## II.    LEGAL STANDARDS

### A.    Section 2241 Habeas Petitions

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

---

[6] Unfortunately, most of the copy of Rudaj's BP-11 form he attaches to his petition is unreadable. See (Doc. No. 1-5 at 1). As such, the Court cannot recite his grounds in support of his appeal to the General Counsel.

[7] Respondent attaches a copy of Rudaj's "Administrative Remedy Generalized Retrieval" to his response. See (Doc. Nos. 6-2 ¶ 4; 6-4). The Retrieval states that the General Counsel's response was due by November 2, 2025, but it does not indicate the date of a decision. See (Doc. No. 6-4 at 27). Based on this information, Rudaj can consider the lack of timely response as a denial of his appeal. See 28 C.F.R. § 542.18 (providing that if "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level").

### B.    Due Process Claims Relating to Prison Disciplinary Proceedings

"[P]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."[8]  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  As such, a prisoner is entitled to the following minimum procedural due process rights when accused of misconduct in prison which may result in the loss of GCT: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in their defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged prisoner is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  See id. at 563–67.

The standard of review concerning the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  See Superintendent v. Hill, 472 U.S. 445, 455–56 (1985).  This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  See id. at 455.  Instead, if there is "some evidence" to support the decision of the hearing examiner, the district court must reject any evidentiary challenges by the petitioner.  See id. at 457.  Overall, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against them was not arbitrary, and that the ultimate decision has some evidentiary support.  See id.

---

[8]  Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  See Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002).  Nevertheless, there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses GCT.  See id.  Since Rudaj's sanctions included the loss of GCT, he has identified a valid liberty interest in this matter for due process purposes.

11

### III. DISCUSSION

#### A. The Parties' Arguments

Rudaj's habeas petition contains only a limited recitation of his grounds for relief. See (Doc. No. 1 at 6). Despite this issue, the Court construes Rudaj as asserting that his due process rights were violated because the DHO failed to base their decision on sufficient evidence. See (id.). He states that the area with the hole was under the control of his cellmate; therefore, he lacked "constructive possession as [he] had no dominion or control over [the] relevant area." See (id.). He also argues that there was no evidence introduced that he knew about the hole, and he had only "recently moved into the cell." See (id.).

Respondent contends that the Court should deny Rudaj's petition because he received all the process he was due. See (Doc. No. 6 at 5–9). Respondent asserts that Rudaj received sufficient notice of the charges against him, had an opportunity to call witnesses and present evidence in his own defense, and received a written statement from the DHO identifying the evidence in support of their decision. See (id. at 6–7). Respondent also argues that the DHO properly documented "some evidence" to support their findings, namely "the photographs, incident report, and memorandums [sic] of staff documenting the damage to the wall." See (id. at 7–9).

In his reply brief, Rudaj appears to argue that the "some evidence" standard requires the DHO to rely upon only "reliable" evidence in reaching their disciplinary determination. See (Doc. No. 7 at 1). He also challenges Respondent's Exhibit B to his response, which Rudaj believes shows his housing assignments from March 16, 2011, until September 3, 2025. See (id. at 2). He believes that it references his housing at FCI Allenwood Low as starting on July 11, 2025, even though he had already been incarcerated there for months by that date. (Id.) Due to

this lack of information, he claims that Respondent has failed to attach a complete copy of his housing assignments to his response, and he requests that the Court direct Respondent to submit the remainder of his housing records for consideration. See (id.).

**B.     Analysis**

After reviewing the parties' submissions, the Court concludes that Rudaj fails to show that his due process rights were violated during the disciplinary proceedings at issue. Preliminarily, the Court notes that this analysis will be limited to whether the DHO relied upon sufficient evidence in finding Rudaj responsible for the disciplinary infraction because he does not argue that his disciplinary proceedings otherwise violated his due process rights. In other words, he does not contend that, inter alia, he failed to receive written notice of the charge against him, he lacked an opportunity to call witnesses and present evidence in his own defense, or the DHO failed to provide him with a written statement of the evidence they relied upon in reaching their decision.[9] Secondly, Rudaj's argument in his reply brief about Respondent's Exhibit B to its response is meritless because Exhibit B is not a list of his housing assignments as he claims. Rather, as attested to by Respondent's attached declaration of Austin J. Langon, a BOP CLC Attorney, shows that Exhibit B is a copy of Rudah's Administrative Remedy Generalized Retrieval. See (Doc. No. 6-2 ¶¶ 1, 4). Thus, while Exhibit B notes Rudaj's housing assignments, they appear to be included in this exhibit only because they show his place of incarceration at the time he filed administrative remedies and any appeals. See (Doc. No. 6-4).

---

[9] Even if Rudaj had challenged these aspects of his disciplinary proceedings, his arguments would lack merit as the record shows that he received adequate and timely notice of the charge against him, he had an opportunity to call witnesses and present evidence in his own defense, and the DHO supplied him with a written statement identifying the evidence the DHO relied upon in concluding that he destroyed property valued at $100 or more. See (Doc. Nos. 1-1; 1-2; 6-5–6-7).

13

Accordingly, the Court will not direct Respondent to submit any additional documentation Rudaj mistakenly believes was omitted from Exhibit B.

Turning now to the merits of Rudaj's Section 2241 petition, although the Court understands Rudaj's concern that the DHO relied on insufficient evidence in finding him responsible for destroying property, he is mistaken that the DHO did not identify "some evidence" in support of their decision. The disciplinary hearing record contains "some evidence" to support the DHO's finding that Rudaj, at a minimum, was constructively responsible for the hole in his cell, despite his representation that the hole was located near his cellmate's bed, and he was unaware of it. Even if other prisoners occupied Rudaj's cell prior to prison officials locating the hole in the wall, he indicates in his appeal to the Regional Director that his cell was thoroughly searched approximately three or four days prior to the search that discovered the hole, and prison officials did not locate the hole during this search. If Rudaj's representation is accurate, he acknowledges that he and his cellmate were the only two individuals occupying the cell for a few days prior to the discovery of the hole in the cell wall. Therefore, there was a 50% chance that Rudaj was responsible for the hole in the wall at the time officials discovered it, and as the DHO indicated in their written decision, the whole was covered by fresh paint. See (Doc. Nos. 1-2 at 3–4; 6-7 at 3–4).

When addressing habeas challenges to disciplinary sanctions based on an inmate's possession of contraband, "[c]ourts have held that where the realistic probability of a prisoner's actual possession of contraband is 1 in 6 or greater, the 'some evidence' standard is met." See Sabir v. Warden, FCI-Loretto, No. 20-cv-00152, 2024 WL 1329772, at *3 (W.D. Pa. Mar. 28, 2024) (citing cases), aff'd sub nom., Sabir v. Warden Loretto FCI, No. 24-2102, 2025 WL 2400433 (3d Cir. Aug. 19, 2025) (unpublished). Thus, even in disciplinary cases such as the

instant one, where "there [is the] absence of direct evidence pointing to an inmate's guilt, the 'some evidence' standard of Hill may be satisfied by application of the constructive possession doctrine." See Cardenas v. Wigen, 921 F. Supp. 286, 289 n.4 (E.D. Pa. 1996) (citing Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992)).  This constructive-possession rationale applies equally to this case, even though the infraction involves destruction of property to create a location where contraband can be concealed rather than the possession of contraband.  See, e.g., Brown v. Recktenwald, 550 F. App'x 96, 98 (3d Cir. 2013) (unpublished) (concluding that some evidence of construction possession was enough to support the DHO's decision, "and that is all that is required under Hill to satisfy due process"); Solomon v. Warden, FCI Fairton, 506 F. App'x 147, 149 (3d Cir. 2012) (unpublished) ("In the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged." (citations omitted); Reynolds v. Williamson, 197 F. App'x 196, 199 (3d Cir. 2006) (unpublished) (finding that, "[i]n the absence of direct evidence indicating an inmate's guilt, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine" (citation omitted)); United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992) ("In general, a person has constructive possession if [they] knowingly [have] ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located.").

Overall, the Court finds that the "some evidence" standard is satisfied by application of the constructive possession doctrine to Rudaj's disciplinary proceedings in this case.  The record shows that there was a 50% chance that Rudaj either created or controlled the hole in the wall in his cell, and at best, even accounting for the presence of a prior cellmate, he was still one of only

a few inmates who had access to the area in which the hole was located. There is also no evidence in the record showing that so many inmates had unrestricted access to his cell which would show that the DHO should not have held him to have been constructively responsible for the hole in his cell. Accordingly, Rudaj has not established that he was denied due process because there was insufficient evidence to support the DHO's findings, and the Court will deny his Section 2241 petition.

## IV. CONCLUSION

For reasons set forth above, the Court will deny Rudaj's habeas petition. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania